[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The parties were married on August 22, 1986 in Torrington, Connecticut. By complaint dated March 8, 2000, the Plaintiff, Husband, instituted this action claiming dissolution of marriage, joint custody of the minor children, an equitable division of real and personal property and other relief as law and equity might provide. On September 3, 2002 the Husband filed an amended complaint seeking sole custody of the minor children.
Two minor children were born issue of this marriage: Matthew Newkirk, date of birth July 12, 1990 and Kimberly Newkirk, date of birth June 27, 1994.
The Husband is age 41 and in good health. The Defendant, Wife is age 37 and in good health.
FACTS:
The Husband is a police officer with the City of Torrington with 19 years of service. He currently serves as a Training Officer and works 8:00 a.m. to 4:00 p.m. The Husband has been actively involved in the DARE program for a number of years and is well liked and respected in the community and by his peers.
The Wife is a high school graduate and is employed as a secretary at St. Francis School in Torrington, CT during the school year. During the summer she works at St. Francis 9 hours per week. In addition to her employment at St. Francis, she works in a clerical capacity at Charlotte Hungerford Hospital and also holds a hairdresser's license. Prior to or during the early portion of the marriage she worked as a shampoo person at a local hair salon. No evidence was introduced that a hairdressing salon ever employed her in any higher capacity. The court finds that the Husband has far superior earning capacity than the Wife and as a police office has the ability to retire early and begin a second career. CT Page 12362
The court heard testimony in this matter on September 9th, 10th, 11th, 12th and 26th, 2002. The parties were able to reach an agreement regarding the custody and care of their minor children on September 12th, 2002, which is incorporated herein by reference and made an order of the court.
Mr. Newkirk testified at great length about his Wife's excessive spending habits, lack of truthfulness, ability to care for the minor children and her affair with a co-worker.
The Husband also admitted he repeatedly checked the mileage on his Wife's automobile, searched her trunk, purse, bags and boxes on a regular basis. Mr. Newkirk admitted to having his Wife followed on two occasions in November 2001 and lying to her about having her followed in April 2001 to get her to admit she was having an affair.
Despite Mr. Newkirk's obvious rage over his Wife's affair with a co-worker both parties testified that they had been unhappily married for quite some time. The Wife testified that the Husband first threatened a divorce when their son was 2 years old. Mr. Newkirk again threatened a divorce on a Columbus Day camping trip in October 1998 and admitted that the couple had not had a normal intimate relationship since 1994. Mrs. Newkirk obviously took the October 1998 threat of divorce seriously because that is when both parties testified she began stockpiling kitchen tools and equipment.
When Mr. Newkirk discovered that his Wife had acquired credit card debt in the approximate amount of $13,000 he insisted she pay it off at the rate of $500.00 per month and continue to maintain her other family financial responsibilities she had been responsible for in the past. This demand required her to obtain additional employment, which did not interfere with her child rearing duties. Mrs. Newkirk obtained a job at Charlotte Hungerford Hospital working from approximately 9:00 p.m. to 2:00 a.m. or later if needed. When this job combined with her clerical job at a local church and parenting responsibilities caused her to fall asleep on her feet the Husband accused her of ignoring his and the children's needs.
The court finds that both the Husband and Wife equally bear the burden of fault for this dissolution of the marriage. The Husband, not only acted as a police officer within the confines of his marriage but by word or deed drove a wedge between mother and son as a result of his own anger. The Wife's extramarital affair was clearly wrong. However, it was not the cause of the dissolution but merely the symptom of a marriage CT Page 12363 already beyond repair.
The parties have entered into a custody agreement whereby they will ultimately equally share physical custody of the minor children by November 2002. Given the shared custody agreement and great disparity in earning capacity between the parties the Child Support Guidelines do not apply (Section 46b-215a-3 Regulations of Connecticut State Agencies).
The court has reviewed both the Plaintiff's and Defendant's Financial Affidavits and finds that neither Financial Affidavit accurately reports income. Defendant's Exhibit H shows Plaintiff earned $38,385.35 over 34 pay periods in 2002 resulting in total gross income of $38,385.35 or $1,128.00 per week. The Plaintiff's 2001 Federal Income Tax Return (Plaintiff's Exhibit 5) shows total gross income of $57,957 per year or $1,114.55 per week. For purposes of child support and alimony orders the court has used $1,114.55 because the Plaintiff testified that he received a one time retroactive salary increase payment in 2002 due to a new union contract.
Mrs. Newkirk is employed by St. Francis School as a secretary during the school year and works approximately 9 hours a week during the summer. She supplements her income working at Charlotte Hungerford Hospital as a per diem employee as is reflected on her Financial Affidavit. However, the Defendant failed to take into account that she did not work at the hospital during the months of January, February and May 2002. The court finds that the correct weekly gross income from the hospital is $47.76. Additionally, both the Plaintiff and Defendant testified that the Defendant has a current hairdresser's license and has performed salon services in her home throughout the marriage for friends and family. This activity ceased in 2002 when Mr. Newkirk objected to her clients' children running around the family home with dirty feet and jumping on the couch tracking hair all over. The court finds that the Wife still has the capacity to earn income for her hairdressing skills and based on her own computation of income earned in 2001 (Plaintiff's Exhibit 14) has the capacity to earn a minimum of $12.00 per week. The correction of the Charlotte Hungerford Hospital income and addition of hairdressing income increases her weekly gross income to $435.00.
The gross income figures above include some overtime for both the Plaintiff and Defendant. Testimony at trial demonstrated that both the parties had a history of working overtime including nights and weekends or having more than one job during the entire marriage (see C.G.S. Section46b-215d and see 46b-215a-3 (6) of the Regulations of Connecticut State Agencies). CT Page 12364
Mr. Newkirk testified that his overtime was drastically reduced when he took his present Training Officer position and the court finds that his gross income of $1,114.00 does not include overtime in excess of 45 hours per week.
The court performed the Child Support Guideline computations using the adjusted figures above to compute the support under the Guidelines as a reference only as this case is a deviation from the guidelines due to the stipulated shared parenting plan.
The testimony of the parties during trial of this matter indicated that this couple did not keep a joint checking account to pay family bills but instead divided up the bills. The Plaintiff paid the bulk of the household expenses and the Defendant paid the child related expenses and scheduled her employment around the children's school hours.
Mr. Newkirk purchased a condominium in December 1983 and made a $10,080.00 premarital down payment. The couple lived in the condominium prior to and during the marriage until their present house was built. The Defendant testified that during the premarital cohabitation she saved her income for the couple's wedding and honeymoon. Thereafter, she saved for the purchase of land on which the couple hoped to build a home. The condominium was sold in October 1989 for $77,500. The payoff of the mortgage on the condo was $28,271 and $34,356.11 was used to pay off the balance on the land the couple purchased in March 1988 for $50,000.00. The Plaintiff is seeking 100% of the appreciation on the condominium as a premarital asset. The court finds that the Plaintiff is entitled to 2 1/2 years of premarital appreciation on the condominium (December 1983-August 1986). The Plaintiff failed to introduce any evidence that the appreciation was greater from 1983-1986 than from 1986-1989 therefore the court has assumed equal appreciation for the years the Plaintiff owned the condominium. Total appreciation based on Plaintiff's Exhibit 1 is $44,857.59. Plaintiff is entitled to a credit for 2 1/2 years of premarital appreciation in the amount of $18,698.99.
The Plaintiff drives a 1997 E-150 Van with a value of $10,500, is seeking possession of a 1997 Sierra Camper with a value of $8,000, a lawn tractor with a value of $2,500.00 and a 1986 F-250 Pick-up truck with a value of $500.00 (Plaintiff's Financial Affidavit). The Defendant is not asking that the vehicles, tractor or camper be distributed to her and the value of those items is approximately equivalent to the premarital credit due the Plaintiff.
The parties stipulated that the appraisal of the family home for $250,000 is accurate (Plaintiff's Exhibit 13). The current mortgage is CT Page 12365 $60,300 plus approximately $9,000 for a home equity loan for the purchase of the camper. The court finds that total equity in the family home is $180,700.00.
The Plaintiff testified that his cars were purchased with a cash down payment from his credit union savings account automatically deducted from his salary plus some financing. The Defendant's car was purchased from funds borrowed from the children's accounts. Plaintiff has asked that the Defendant repay the children the amount borrowed for her car but admitted she had never agreed to do so. The court views the marriage as a partnership with each partner having equal rights to their combined income and equal obligation on debts incurred for the benefit of the family. The Defendant's Taurus was used to transport the children to school and activities and for the Defendant to travel to work. It makes no sense to allow the Plaintiff to utilize marital funds from his salary and credit union savings account to buy his vehicles and camper and make the Defendant solely responsible for the repayment of the loan for her automobile.
During the course of these bitter and acrimonious proceedings the minor children were witness to, and subjected to, the daily arguing of their parents hurling one nasty accusation after another at each other. The older child, Matthew, has clearly sympathized and identified with his Father-at one point, he allegedly threatened his mother with a knife. This child then accompanied his Father to the Winsted Police Department to fill out a complaint for domestic violence. The Plaintiff had his Wife arrested for domestic violence and a protective order was issued prohibiting the Defendant from entering the family home.
Since that time, the Plaintiff reports that the children, specifically the oldest child, Matthew, have been increasingly resistant to visiting their mother. It is clear to this court that the children have been subjected to more information about the divorce proceedings than was appropriate. The court strongly agrees that the shared physical custody arrangement entered into by the parties is in the best interest of the minor children. However, to have this arrangement work the parties must be in a position to offer the children the same accommodations, equipment and comforts as the other parent and the orders of the court have been crafted to achieve that effect. Mrs. Newkirk simply doesn't have the skills or training to enable her to obtain employment comparable to her Husband's.
The Court finds that residence requirements have been satisfied and neither party has been the recipient of public assistance. All pertinent criteria outlined in Chapter 815j of the General Statutes were considered CT Page 12366 by the court in the entry of the following orders as well as the evidence, testimony and claims of law made by the parties:
ORDERS:
DISSOLUTION OF MARRIAGE
A decree dissolving the marriage on the grounds of irretrievable breakdown shall enter on October 1, 2002
CUSTODY/VISITATION
The court finds that the agreement of the parties dated September 12, 2002 regarding a shared parenting plan gradually implemented over the next three months is in the best interest of the minor children and it is incorporated herein by reference. The court shall retain jurisdiction over this matter for the next year to monitor progress towards the shared parenting plan and maintain continuity of the court orders regarding custody and visitation.
CHILD SUPPORT
Commencing on November 12, 2002 the parties shall share physical custody of the minor children. The Court finds that it would be inappropriate and inequitable to apply the Guidelines due to deviation 6 (A) ii. Prior to November 12, 2002 when the shared parenting plan becomes fully effective the Pendente Lite Orders regarding the payment of tuition, school uniforms and clothing shall remain in full force and effect.
Commencing November 12, 2002 the Plaintiff shall pay the Defendant by immediate wage execution the sum of $160 per week as child support.
The parties shall exchange signed copies of their federal income tax returns (along with a copy of all forms W-2, 1099 and the like) each year by April 15th for as long as any child remains under the age of 18 years.
The obligations of support and maintenance of the minor children shall terminate as each child attains the age of eighteen (18) years, marries, dies, becomes employed full time being no longer enrolled in high school, or becomes otherwise emancipated, which ever occurs first. However, if a child reaches the age of eighteen (18) years, yet continues as a full time high school student and resides with their parents, the Plaintiff shall continue to pay child support as specified above, until CT Page 12367 the child completes the twelfth (12) grade or attains the age of nineteen (19) years, whichever occurs first.
INCOME TAX EXEMPTIONS:
The Husband and Wife shall each take one child as a dependent for income tax purposes. When the oldest child turns 18 or is no longer eligible to be used as a dependency exemption, the Plaintiff and Defendant shall alternate the dependency exemption for the youngest child with the Husband having the child for the first year and the Wife having the child for the second year and alternating on a yearly basis thereafter.
ALIMONY
The Husband shall pay to the Wife alimony of $75.00 per week for a period of ten (10) years from the date of the dissolution, non-modifiable as to term unless the Wife dies, remarries, or cohabitates as defined by statute. This sum shall be paid by an immediate wage execution.
PERSONAL PROPERTY
The Plaintiff shall retain all of the personal property located in the property located at 4 Stadler Heights, Winsted, CT, except that the Defendant shall retain the items listed on Attachment A hereto.
The court specifically orders the Husband to allow the Plaintiff access to the entire family home to remove her property and assure her that all of the items on the above list have been provided to her within 45 days of the date of these orders. The Wife shall be escorted by an individual of her choice to assist her with removing the items listed on Attachment A.
The court is not specifically awarding to either party the property of the minor children even those collectable items given to the minor children by one side of the family or the other. The court has ordered each home contain approximately 1/2 of the children's clothing toys and collectibles.
The Plaintiff and Defendant are ordered to make unedited copies of all photographs and families videotapes in their possession and provide a copy to the other within 45 days of the date of this decision.
LIFE INSURANCE
The Wife shall continue to maintain her existing policy of life CT Page 12368 insurance in the amount of $100,000.00 with the children named as the beneficiaries until the minor children have both reached the age of majority. The current cash values of the existing life insurance policies shall be the sole property of the Wife.
The Husband shall continue to maintain his existing policy of life insurance in the amount of $100,000.00 with the Wife as beneficiary for as long as he is obligated to pay alimony and/or child support. The current cash values of the existing life insurance policies shall be the sole property of the Husband.
The parties shall both provide to the other proof of said insurance on annual bases.
Either party may substitute a term life insurance policy with the same face value as above for their current policies.
PENSIONS, IRA ACCOUNTS, 401K ACCOUNTS AND DEFERRED COMPENSATION ACCOUNTS
The parties shall equally divide all pensions, IRA accounts, 401K accounts and deferred compensation accounts as listed on their respective financial affidavits by means of a Qualified Domestic Relations Order, if needed. The parties shall equally share in the cost of preparing the necessary documents. Each party shall be awarded joint and survivorship benefits to protect each party in the event of the other's death. The court has taken into consideration Plaintiff's argument that the Wife will collect social security in addition to her share of the Plaintiff's pension. This fact is outweighed by the Wife's far inferior earning capacity and the ability of the Plaintiff, a police officer, to retire well before age 65 and earn a second pension and/or generate social security credit in his name.
MEDICAL INSURANCE AND UNREIMBURSED MEDICALS — CHILDREN
The Plaintiff shall maintain, at his sole expense, the present medical/dental insurance for the children, which is provided to the Husband through his employment. If said insurance is no longer available to the Husband through his employment at a reasonable cost, the parties shall equally share the cost of obtaining such medical and dental insurance. The Plaintiff and Defendant shall be equally responsible for the first $100.00 per year of unreimbursed medical and dental expenses (including orthodontics). Thereafter the parties shall equally split the cost of any unreimbursed medical, dental, optical, psychological, orthodontic and prescriptive drug expenses incurred on behalf of the minor children for as long as the Husband is obligated to pay child CT Page 12369 support for said children.
The provisions of 46b-84 (e) shall apply.
MEDICAL INSURANCE — WIFE AND HUSBAND
The Defendant shall be responsible for her own medical insurance coverage. The Plaintiff shall be responsible for his own medical insurance. The Plaintiff shall cooperate with the Defendant in obtaining any COBRA benefits available to her. The court is not requiring the Plaintiff to pay for Defendant's COBRA insurance because, through the court orders for child support and alimony, their incomes are comparable.
REAL PROPERTY
 — The Plaintiff shall have 14 days to decide whether to refinance the family home and pay the Defendant the sum of $88,850 or place the home on the market for sale.
 — If the Plaintiff decides to refinance the family home the Defendant shall, within 60 days of the date of the dissolution, QuitClaim to the Plaintiff her interest in the marital property located at 4 Stadler Heights, Winsted, Connecticut. In consideration thereof, the Plaintiff shall pay to the Defendant, immediately upon the receipt of the Quit Claim Deed, the sum of $88,850.00 (calculated as follows: Fair market value of the marital residence $250,000.00, less outstanding mortgage of $60,300, less standard refinancing fees of $3,000, less the home equity loan for the camper in the approximate amount of $9,000 divided by 2).
— If the Plaintiff is unable or unwilling to refinance the family home the home shall be listed for sale. The parties are to fully cooperate in the listing, showing and closing of the property. The parties shall immediately list the property for sale at its fair market value with a MLS real estate agent familiar with real property values in the Winsted area. If the parties cannot agree on a listing broker, terms of the listing or like details, the Attorney for the Minor Children shall decide on the listing broker and terms of the listing. The parties shall accept the first bona fide offer within 5% of the asking price. If the home is not sold within 45 days of listing the price shall be reduced by agreement of the parties after consultation with their real estate broker. The Husband shall have sole and exclusive use of the premises until the sale of the property, and he shall be solely responsible for routine maintenance costs, taxes, CT Page 12370 insurance and utilities incurred during the period of exclusive use and shall not permit waste or damage to the property. The Plaintiff shall leave the premises in broom-clean condition. While occupying the house, he shall also be responsible to pay for all minor repairs to the property that cost less than $500 in payments to third parties or for materials; the parties shall split equally the cost of paying third persons to perform major or structural repairs costing more than $500.00. The parties shall equally split the net proceeds after all expenses from the sale of the home (gross proceeds less the payoff of the first mortgage, home equity line, realtor commissions, attorneys fees for sale, conveyance taxes and recording fees) have been paid.
 — The court shall retain jurisdiction over this matter for the next year to monitor the refinancing or sale of the family home and maintain continuity of the court orders.
STOCKS — CHILDREN
The AOL, JDSU, Oracle stock accounts and mutual fund account (s) in the names of the minor children shall be maintained for the benefit of the children. The Husband shall provide to the Wife an annual accounting of such accounts on April 15th of each year. The accounts shall not be utilized unless both parties agree in writing prior to the disbursement of any funds.
STOCKS, BONDS MUTUAL FUNDS AND BANK ACCOUNTS
The jointly owned shares of JDS Uniface shall be equally divided between the parties. Said transfer shall occur within 30 days of the date of the judgement.
The Husband's Oppenheimer Funds account #240 40000223773 in the approximate value of $1,856.97 is composed of premarital funds and shall be his sole property (Defendant's Exhibit L and M).
The Oppenheimer Funds account #700 7006335538 shall be equally divided between the parties. Said transfer shall occur within 30 days of the date of the judgement.
DIVISION OF DEBTS
Except as otherwise provided herein, the Plaintiff shall be responsible for the debts on his financial affidavit and the Defendant shall be responsible for the debts on her financial affidavit. CT Page 12371
The Husband shall be solely responsible to repay the money borrowed from the children's accounts to purchase the Wife's automobile.
ATTORNEY FEES
The parties shall each be solely responsible for their own attorney fees. The parties shall equally share the cost of the fees for the attorney for the minor children and the guardian ad litem. The parties shall each pay the Attorney for the Minor Children and Guardian Ad Litem the sum of $75.00 per month (for a total of $150.00 from each party) until their bills are satisfied. The Wife shall receive credit for her $1,400 payment of the retainer to the Guardian Ad Litem and the Husband shall receive credit of $500. These fees shall be considered child support and nondischargeable in bankruptcy.
MOTOR VEHICLES. TRACTOR AND CAMPER
The Plaintiff shall be entitled to sole ownership of the 1997 Ford E150 Van, 1997 Sierra Trailer, 1986 Ford F250 pick-up truck and the John Deere tractor. The Plaintiff shall hold the Defendant indemnified and harmless from the loans, taxes, registration and insurance for said vehicles. The Defendant shall be entitled to sole ownership of the 1992 Ford Taurus she is currently driving. The Plaintiff, Husband, shall be solely responsible for reimbursing the funds borrowed from the minor children's accounts to purchase this vehicle. The Defendant shall hold the Plaintiff indemnified and harmless from the taxes, registration and insurance for said vehicle. The parties shall immediate complete and sign any paperwork necessary to change title on the above vehicles.
MISCELLANEOUS
Each party shall sign any necessary documents to effectuate the orders contained herein.
Holly Abery-Wetstone, P.J.
 Attachment A
1. Oil Glass Hurricane Lamps (From Wife's parents) 2. Wagon Wheel (from Wife's parents) 3. Oxen Yoke (From Wife's parents) 4. Wishing Well (Mother's Day Gift from son) 5. Windchimes 6. Handmade Blanket made by Wife's sister 7. Ceramic Elephants (made by Wife's Mother) CT Page 12372 8. Brass Bird Cage in attic 9. Wife's CD Player 10. Cobalt Blue Canister 11. Multi-colored bottle (gift from son) 12. Mother's Day Cards from Kim in green picture frame 13. Tall man's dresser (from Wife's family) 14. Women's dresser with mirror (from Wife's family) 15. Small 3 drawer carved dresser (from Wife's great grandmother) 16. Black wire shelves (purchased by Wife for bedroom) 17. White 2 door cabinet (purchased by Wife) 18. White painted end table (from Wife's parents) 19. Rocking Chair (from Wife's parents) 20. Muslin cloth wood hamper 21. Set of 2 dry sink end tables (from Wife's parents) 22. Black portable large screen RCA TV 23. TV/VCR cart in kitchen 24. Pitcher and bowl stand (from Wife's mother) 25. Singer sewing machine console from Wife's great grandmother) 26. Dining room table (from Wife's parents) 27. Wicker book shelf (Wife purchased at tag sale) 28. White dressers (given to Wife by a friend) 29. Kim's white rocking chair 30. Wicker trunk and sewing supplies 31. 1/2 children's clothing, toys and collectibles) 32. Pink glass cake plate (from Kathleen Shea) 33. Divided serving dish with colored glass flowers (gift from Wife's sister) 34. All glass and dishware in attic including family pieces boxed together, pink glasses and bowl, turkey platter and pasta bowl, egg weigher, misc.; box with large white gravy bowl and ceramic bowls 35. Nautical plate (made by Wife's mother) 36. Canning jars (boxed in attic) 37. Sidenstriker glass plate with cobalt blue flowers 38. Precious Moments 2 pieces 39. Cobalt Blue glass collection-approximately 5 pieces 40. Bear and Beanie Baby Collection 41. Holiday decorations previously divided to include white ceramic Xmas tree, ceramic pumpkin with children 42. Waterfountain (birthday gift from Wife's parents) 43. All yarn, fabric, quilting supplies and sewing supplies 44. Ken more sewing machine (from Wife's mother) 45. Large old crock (from Wife's grandfather) 46. Boxes of Wife's childhood memorabilia (papers, small toys, photos, books and the like) CT Page 12373 47. All stuffed animals belonging to Wife including teddy bears, Ronald McDonald doll, Hamburglar doll, box of dolls (Cabbage Patch and baby doll) 48. Pink glass cookie jar (from Wife's grandmother) 49. Painting with blonde girl by Kathleen Shea 50. Lighthouse painting with white frame (gift from Wife's mother) 51. Picture painted by Wife's Uncle Ken of PO and truck with dog 52. 2 pitcher and bowl sets, I cream and red (from Wife's mother) and 1 cream and flowers (gift from Wife's sister) 53. Wife's family heirlooms (not including items given to the children) 54. Golf Clubs and bag (gray/blue bag and new blue clubs) 55. Box of bottles belonging to Wife's parents 56. Pot Belly Stove (belonging to Wife's parents) 57. Old fashioner plow (belonging to Wife's parents) 58. Old copper can (from Wife's grandfather) 59. Wife's childhood runner sled 60. All Wife's clothing, make-up, jewelry (including 10K gold Claddah ring, sapphire ring, gold crosses, gold metal, personal hair care products and equipment, perfumes and lotions 61. Pocketbooks-approximately 6-8 leather 62. Wedding dress and hat 63. Christening outfit (worn by Kim but originally used by Wife when she was baptized) 64. 1/2 Children's baby boxes of memories 65. Kim's 1st Communion dress (purchased by Wife's parents) 66. 1/2 cookbooks 67. All legal file cabinets and contents 68. Medical dictionary with green cover (for Wife's employment) 69. All Charlotte Hungerford Hospital information binders 70. Wife's reading books 71. Copies of the recipes 72. 1/2 knick-knacks (i.e. candle holders, candles, baskets, etc.) 73. Hand well pump 74. Picture book Wife's Mother prepared for Matt (actual photographs and book) 75. Black wrought iron swirl candle holder with crackle glass 76. Blue glass lamp holder with frosted shade 77. Large cobalt blue glass pitcher 78. Wife's Rx including vitamins, birth control (Necom), Clarinex, Immodium 79. Wife's waxing unit (purple with supplies, muslin strips, wooden sticks and solutions) 80. Perm rods (purple, white, gray, blue, pink, beige and black. Approximately 4 dozen each. 81. Frosting cap 82. Wife's grandmother's cookie press CT Page 12374 83. Oak coffee grinder with black iron crank 84. China and flatware in wooden chest, service for 12 85. Silver knife set 86. Kitchen Aid mixer and stand 87. 1/2 Disney videos (Wife's mothers Xmas gifts to children) 88. Decorative bear swing-wood and black iron 89. Copies of Kim's dance recital videos 90. 2 afghans made by Wife's mother 91. Checkerboard quilt (made by Wife's great aunt) 92. Wife's childhood photo album CT Page 12375